THOMAS PENNINGTON, PLAINTIFF, v. DIRECTOR GEN-
ERAL OF RAILROADS, DEFENDANT.

Argued June 8, 1921—Decided April 13, 1922.

Plaintiff accidentally ran his automobile on a dark, foggy night, on the railroad track of the defendant where no crossing existed, and being unable to extricate it and fearing the approach of a train, sent a friend to the nearest crossing, over three hundred feet away and adjoining a station, to notify the flagman. The friend did so and asked for the loan of the flagman's red lantern, which was denied, and then asked that the flagman signal the train, which, according to plaintiff's evidence, he refused to do, and directed the friend to apply at the station. He went there and found it apparently closed. Presently a train came and demolished the automobile. In a suit to recover its value, *held*, the company owed no duty except to abstain from acts willfully injurious, that there was no evidence to go to the jury on this point, and a verdict was properly directed.

On plaintiff's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KALISCH.

For the plaintiff, *William C. French*.

For the defendant, *French & Richards*.

The opinion of the court was delivered by

PARKER, J. The plaintiff, driving his automobile on a dark night, in a westerly direction on a street called Grant avenue, in West Collingswood, drove it unintentionally on the defendant's right of way at a place where there was no crossing, and was unable to extricate it, so that a few minutes afterward it was struck and practically destroyed by one of the defendant's trains. He brought this action to recover the value of the automobile and the trial judge directed a verdict for defendant, but later allowed this present rule. The three

reasons in support of the rule all in effect challenge the propriety of the direction, which is the sole point involved.

At the trial it was conceded that the company, under the circumstances, owed the plaintiff no duty except to abstain from willful and wanton injury; and this is manifestly correct Grant avenue did not cross the railroad but connected at its westerly end with a street or highway bordering the railroad right of way. Plaintiff knew this and expected to turn parallel with the railroad into this other street, but miscalculated in the fog and the darkness, and his car ran partly down a slight embankment, the front wheels stopping about at the nearest rail and the hind wheels on the slope. His engine stalled and the car was apparently helpless. In this situation plaintiff was a trespasser on the right of way; whether intentionally or not does not matter; and hence the defendant owed him no duty of care, in the legal sense of the word. *Furey* v. *New York Central Railroad Co.,* 67 *N. J. L.* 270; *Dieckman, Administratrix,* v. *Delaware, Lackawanna and Western Railroad Co.,* 81 *Id.* 460; *Hess* v. *Atlantic City Railroad Co.,* 95 *Id.* 494. Recognizing this obstacle to recovery on any ground of mere negligence, the plaintiff's counsel, arguing in opposition to a motion to nonsuit on his opening, assured the court that if plaintiff failed to prove "willful negligence" he was "ready for a direction of a verdict." What is meant by "willful negligence," and whether it is tantamount to "willful injury," are questions not necessary to decide at this time. See 40 *Cyc.* 947, and Workmen's Compensation act, paragraphs 1 and 23. The question for determination in this case, as we view it, is whether there was any evidence on which the jury might find that there was a breach by defendant (or by its servants in such manner as to charge defendant) of the only duty owing by defendant to plaintiff under the circumstances—*i. e.*, to abstain from acts willfully injurious; the most that can be demanded even in cases where there is permission or acquiescence on the part of the lawful occupant of the land. *Phillips* v. *Library Co.,* 55 *N. J. L.* 307. On a careful examination of the evidence we find none for the jury to lay hold of on this point. As to de-

fendant's engineer, no claim is now made. As to the flagman, the evidence on the plaintiff's case indicated that after it became plain that the car could not be extricated, a friend of the plaintiff named Hunsinger, who was with him, went at plaintiff's request to the nearest crossing, some three hundred and thirty-five feet away, where there was a flagman, informed him that the automobile was on the track, and asked for the loan of the flagman's red lamp, which was refused; he then asked the flagman to "flag" the train, and Hunsinger testifies that the flagman refused that also, although the testimony of the latter is that he did swing his red lantern across the track as the train approached, but failed to stop the train. Hunsinger further testified that the flagman sent him to the station close by to have the train flagged, but that the station was "dark." Finally, the train came past and struck the car; the engineer testified that he saw no red light except that on the automobile when he was about forty feet away.

On this evidence the jury might lawfully say that the flagman was asked to lend his red lamp and refused; and was then asked to flag the train and refused, telling Hunsinger to go to the station for this purpose. We are unable to see how any intent on the part of the flagman to do willful injury can be read in this testimony, even if any malice of a flagman can be imputed to the corporation, a point on which we express no opinion. His primary duty was to guard the crossing and prevent crossing accidents at that point. No doubt he was controlled by rules of the company, as is usual in such cases, and it may well be that the rules did not allow him to lend his lantern; in fact, his testimony is that he said to Hunsinger, "I have to have the light here on the crossing." And assuming, as we must for present purposes, that he refused to show a red light to the approaching train, and referred Hunsinger to the station, there is nothing in this to indicate that the refusal was prompted by other considerations than his conception of his duty in the premises, or a failure to exercise good judgment, or it may be a disinclination to assume the responsibility for stopping a train on the report of a stranger, touching a situation which, on account of the darkness and

fog, he could not see at a distance of over three hundred feet. Whatever the explanation, we can find no intimation in anything he is claimed to have said or done which points to legal malice, which would be an essential element of an action even as against him. In this aspect the case is very similar to *Price* v. *New Jersey Railroad, &c., Co.,* 31 *N. J. L.* 229 (at *p.* 238), where plaintiff's horses, straying on the defendants' track, were seen by the engineer of an approaching train who failed to stop and ran them down.

The rule to show cause will be discharged.